VAN CAMP HARDWARE AND IRON COMPANY vs. JOHN C.
PLIMPTON & another, & trustee.

Suffolk.    January 10, 11, 1899. — September 7, 1899.

Present: HOLMES, C. J., KNOWLTON, MORTON, & LATHROP, JJ.

*Trustee Process — Duty of Shipowner summoned as Trustee as to Goods of
Defendant laden on Ship for Carriage to Distant Port.*

If the freight and the expense of unloading goods which have been laden on a ship
for carriage to a distant port, and of the delay thereby occasioned to the ship-
owner, will amount to as much as or more than the value of the goods, he can-
not be required, after the service of a trustee writ upon him, to unload them in
order that they may remain here to be taken on execution.

When goods of the defendant in a trustee process have been laden on board of a
ship by the alleged trustee in the usual course of its business for carriage to
a distant port, and the expense and delay attending the unloading of them will
be as much as they are worth, the trustee cannot be required at its own risk to
transport them to their destination and then to return them to the port of ship-
ment in order that they may be there taken on execution, if the plaintiff recovers
judgment against the defendant.

TRUSTEE PROCESS.  In the Superior Court, the trustee was
discharged; and the plaintiff appealed to this court.  The facts
appear in the opinion.

*L. M. Friedman,* for the plaintiff.

*L. S. Dabney,* (*F. Cunningham* with him,) for the trustee.

MORTON, J.  The defendants are described in the writ as of
Liverpool, England, and as doing business under the name of
J. C. Plimpton and Company.  The plaintiff is an Illinois cor-
poration.  Suit was brought here by a trustee process in which
Frederick Leyland and Company, a corporation established under
the laws of Great Britain, was summoned as trustee of the de-
fendants.  The trustee answered, and after a hearing upon the
answer the Superior Court ordered that the trustee be discharged.
The plaintiff appealed from that order, and the sole question be-
fore us is whether at the time of the service of the writ upon it
on May 3, 1898, the trustee had in its hands or possession any
goods, effects, or credits of the defendants.

It appears from the trustee's answer that it owns and runs a
line of steamships between Boston and Liverpool, and is engaged

in the transportation of freight between those two cities.   On April 29, 1898, it received from the Boston and Albany Railroad under through bills of lading to J. C. Plimpton and Company, Liverpool, a car load of lawn mowers in cases marked J. C. P. & Co.   On April 29 and 30 these cases were laden on board the steamship Cestrian belonging to the trustee, which was taking in a cargo for Liverpool.   The cases were stowed "in different places in the different hatches, holds, and decks to fill up small spaces by what is commonly known as broken stowage, and had been so laden and stowed in different places and among and underneath other cargo" before the writ was served on the trustee.   In order to unload the lawn mowers it would have been necessary to unload substantially all of the ship's cargo, except the grain and provisions, and would have cost at least $2,000, and would have delayed the ship at least three days. Provisions and other perishable cargo had been laden on board the steamship before the service of the writ, and cattle were on the wharf ready to be laden on board, which would have suffered great damage by any delay in sailing and the expense of feeding, which would have been at least $500 per day.   The expense of unloading, and the loss which the trustee would have suffered by the delay, would have amounted to more than the value of the lawn mowers.   The trustee also alleges, if that is material, that the plaintiff had knowledge of the whereabouts of the lawn mowers before they were laden upon the steamship, and an opportunity to attach them if they were the property of the defendants.

We think that the action of the Superior Court in discharging the trustee was right.   We assume in favor of the plaintiff that the mere fact that the goods were in transit would not of itself entitle the trustee to be discharged.   *Adams* v. *Scott*, 104 Mass. 164.   We also assume in its favor that when the goods were put on board the steamship the title to them was in the defendants, and that the goods are to be regarded as intrusted to or deposited in the hands or possession of the trustee within the meaning of the statute.   But it does not follow that the trustee should be charged.

The object of the trustee process is to enable a creditor to attach goods or credits of his debtor in the hands of a third per-

son. When goods are attached the trustee is required to hold them till judgment is obtained or the action is otherwise disposed of in order that they may be taken on execution if the plaintiff obtains judgment against the defendant. But it is well settled that the trustee is not to be put in any worse position pecuniarily by reason of the attachment than he would otherwise have occupied in respect to the goods or credits attached. *Boston Type Co.* v. *Mortimer*, 7 Pick. 166, 168. *Smith* v. *Stearns*, 19 Pick. 20, 22. *Waldron* v. *Wilcox*, 13 R. I. 518. Drake, Attachment, (2d ed.) § 462.

If, for instance, he has advanced on goods of the defendant in his possession their full value or has a lien on them for their full value, he will not be charged as trustee and will not be obliged to deliver up the goods to be taken on execution. *Burlingame* v. *Bell*, 16 Mass. 318, 324. *Grant* v. *Shaw*, 16 Mass. 341, 344. *Curtis* v. *Norris*, 8 Pick. 280.

Or, if before final answer the defendant becomes indebted to him on a contract entered into before the service of the writ he will be chargeable only with the final balance, if any, that may be due. *Lannan* v. *Walter*, 149 Mass. 14. We regard this case as analogous to those. The defendant could not have compelled the trustee to unload the goods without tendering full indemnity for the expense to which it would thereby be put, and without offering to pay the freight. *M'Gaw* v. *Ocean Ins. Co.* 23 Pick. 405. *Lord* v. *Neptune Ins. Co.* 10 Gray, 109, 119, 120. *Violett* v. *Stettinius*, 5 Cranch C. C. 559. *Shipton* v. *Thornton*, 9 Ad. & El. 314. *Thompson* v. *Small*, 1 C. B. 328. Hutch. Carriers, (2d ed.) § 337.

The trustee's claim to be reimbursed for the expenses caused by unloading would not perhaps be a lien upon the goods and would not perhaps constitute a set off in the strict sense of the words against a demand for the goods by the defendant; but it would furnish a valid excuse for their non-delivery and would relieve the trustee from liability for their conversion. "The trustee," it is said in *Eddy* v. *O'Hara*, 132 Mass. 56, "being a mere stakeholder summoned into a suit in which he has no personal interest, is entitled to the protection of the court under circumstances in which an ordinary defendant might be held liable." If the freight and the expense of unloading the goods

and of the delay thereby occasioned to the trustee would have amounted to as much as or more than the value of the goods, we do not think that the trustee could be required to unload them in order that they might remain here to be taken on execution. And it follows that if the status of the goods at the time of the service of the writ upon the alleged trustee was such, either because the trustee had a lien upon them or for some other equally valid reason, that the trustee could not be required to hold them in order that they might be taken on execution, then the trustee was entitled to be discharged.

It is no answer to say that the trustee could have carried the goods to Liverpool, and brought them back.   The statute contemplates that in order to charge the trustee the goods shall be in his possession and within the Commonwealth at the time of the service of the writ upon him (*Andrews* v. *Ludlow*, 5 Pick. 28) ; and that they should remain here in order that they may be taken on execution.   If the trustee transports them to foreign parts, he does so at his own risk.   And we think that when goods of the defendant have been laden on board of a ship by an alleged trustee, in the usual course of its business for carriage to a distant port, and the expense and the delay attending the unloading of them will be as much as they are worth, the trustee cannot be required at its own risk to transport them to their destination, and then to return them to the port of shipment in order that they may there be taken on execution if the plaintiff recovers judgment against the defendant.   It might be doubtful whether under such circumstances the alleged trustee would be entitled to return freight and to the expense of reloading, to say nothing of insurance and possible duties and other expenses, if any.

The plaintiff relies on *Adams* v. *Scott, ubi supra,* and *Landa* v. *Holck,* 129 Mo. 663.   But in neither of those cases did it appear that to unload the goods, or deliver them to the person entitled to them, would subject the alleged trustee to an expense equal to or more than the value of the goods in its possession, or would impede the transportation of other goods and cause injury to them, or that there was any right on the part of the alleged trustees to the possession of the goods for the purpose of earning freight.

We have not thought it necessary to trace the history of the statutes in this Commonwealth relating to the trustee process. For an exhaustive discussion of the process of foreign attachment as practised in the city of London, see *Mayor & Aldermen of London* v. *Cox*, L. R. 2 H. L. 239.

*Appeal dismissed; order discharging trustee affirmed.*