CHARLES H. COX *vs.* CENTRAL VERMONT RAILROAD COMPANY & trustee.

FRANCIS A. AMBLER *vs.* SAME.

W. F. BURDITT & another *vs.* SAME.

E. C. DENNIS *vs.* SAME.

ROBERT T. PRENTISS *vs.* SAME.

DAVID WHITING & others *vs.* SAME.

C. B. EDGERLY *vs.* SAME.

E. C. CROSBY & another *vs.* SAME.

HOWARD B. CHASE *vs.* SAME.

W. B. JOHNSON *vs.* SAME.

SAMUEL P. TRAIN *vs.* SAME.

Suffolk.    November 14, 15, 1904. — April 4, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, BARKER, HAMMOND, LORING, & BRALEY, JJ.

*Trustee Process.    Railroad.*

Statements made upon information and belief in the answer of one summoned as trustee by trustee process in the absence of anything in the record to control them must be taken as true.

In an action against a railroad company another railroad company cannot be charged by trustee process for money credited to the defendant on account of the earnings of railroads beyond the defendant's lines which the defendant would take only as the agent and trustee of the companies operating those railroads.

In an action against a railroad company another railroad company can be charged by trustee process for money due to the defendant on account of the earnings of a railroad leased to the defendant by an instrument under which the defendant is to conduct the business of the leased road as a proprietor and not as a trustee, its possession and control being that of a lessee bound by the covenants of the instrument.

In an action against a railroad company another railroad company cannot be

charged by trustee process for cars in its possession mortgaged by their owner and lessor to which the defendant's only title is that of a lessee for ninety-nine years under an instrument containing among other covenants one to keep the cars in good condition and to replace them with other like property when worn out, and a covenant giving the lessor the right at any time, after a short notice, to enter and take possession of the property and terminate the lease in case of a breach of covenant by the lessee.

Sections 3300, 3353 and 3443 of R. L. of Vermont, 1880, give no right to attach by trustee process or otherwise rolling stock leased to a defendant railroad company but which it never has owned.

R. L. c. 167, § 39, providing that railroad cars and engines in use and making regular passages on railroads shall not be attached upon mesne process within forty eight hours previous to their fixed time of departure unless the officer first demands other property upon which to make the attachment, applies to an attachment of cars and engines by trustee process.

In an action against a railroad company another railroad company cannot be charged by trustee process for a freight car in its possession on a side track in another State.

ELEVEN ACTIONS OF CONTRACT, numbered on the docket of the Superior Court for the county of Suffolk from 62 to 72 inclusive, against the Central Vermont Railroad Company in which the Boston and Maine Railroad was summoned as trustee. Writs dated December 8, 1890.

The liability of the defendant in these actions was determined at a previous stage of the cases, as reported in 170 Mass. 129.

On June 21, 1898, the Superior Court upon a motion of the plaintiffs that the alleged trustee be charged upon its answers made the following order:

" As it appears by its answers to the plaintiffs' interrogatories — Answer to Int. 3, filed May 29, 1897 — that there were some goods, effects or credits to wit: certain credits and money of the defendant in the hands and possession of the alleged trustee at the time of the service of the writ upon it — for which it is liable as such trustee.   It is *ordered* that the said Boston and Maine Railroad be and stand charged as trustee — without determining whether there was any valid or such attachment of any cars of the defendant then in its hands or possession, for which it is, or may also be liable to be charged."

On April 29, 1903, the plaintiffs moved that an order of notice be issued to the Grand Trunk Railway Company, a corporation established under the laws of the Dominion of Canada, ordering it to appear for the purpose of determining its title, if any, to the funds held by the trustee.   This motion was opposed by the

trustee, but the Superior Court ordered that the notice be given, and it was served upon the Grand Trunk Railway Company by leaving an attested copy with the commissioner of corporations of this Commonwealth as its agent. The Grand Trunk Railway Company did not comply with the notice and never appeared in the cases.

On August 12, 1903, in pursuance of a motion previously filed, the Boston and Maine Railroad summoned as trustee moved in the Superior Court before *Schofield*, J. that the trustee might be discharged or if chargeable that the extent to which it was chargeable might be ascertained. The judge made certain findings and rulings as stated below, and ordered that the trustee be charged in the sum of $12,840.89. Being of opinion that the questions involved in the cases ought to be determined by this court before any further proceedings were had in the Superior Court, with the consent of all the parties, he reported the cases for determination by this court. If the findings and rulings made by the judge were right, judgment was to be entered on the verdict in each case charging the trustee in accordance with the ruling and order made. If any finding or ruling made by the judge, to which exception was taken, was erroneous, such finding or ruling or any order based upon it was to be set aside and such judgment and order were to be entered as law and justice might require.

The report was as follows:

On November 20, 1894, the plaintiff in each action recovered a verdict against the defendant, and the exceptions taken at the trial were overruled on January 8, 1898. Nothing remains to be done before judgment except to determine whether and to what extent the trustee is chargeable.

The trustee was charged generally by an order made on June 21, 1898, [quoted above] upon its answers that then had been filed without determining any question as to the amount for which it was chargeable. Afterwards, on December 1, 1902, the trustee by consent of the plaintiffs was allowed to file an additional answer amending its former answers. On August 5, 1903, at a hearing before *Sheldon*, J., the trustee moved that the order of June 21, 1898, might be vacated. The motion was denied, and the trustee excepted.

Upon the hearing of the motion made on August 12, 1903, which is mentioned above, the trustee requested the following rulings:

1. That the trustee is not chargeable for the $16,521.42 mentioned in its additional answer as due to the Grand Trunk and other railway companies the same never having been due to the defendant.

2. That the trustee is not chargeable for the $2,154.18 mentioned in the same answer as arising from business on the Ogdensburg and Lake Champlain Railroad, the same being subject to a trust under the lease of that railroad, and the defendant having no beneficial interest in this money.

3. That the trustee is not chargeable for the $10,686.71 mentioned in the same answer as arising from business on the Consolidated Railroad, the same being subject to a trust under the lease of that railroad and the defendant having no beneficial interest in this money.

4. That the trustee is not chargeable for the twenty-seven freight cars mentioned in the same answer as belonging, two to the Burlington and Lamoille Valley Railroad Company and twenty-five to the Ogdensburg Car Company.

5. That the trustee is not chargeable for the cars comprised in the mortgage by the Consolidated Railroad Company to the American Loan and Trust Company, the interest of the defendant under the subsequent lease to it by the Consolidated Railroad Company having been extinguished by the foreclosure of the mortgage.

6. That the five cars purchased by the defendant out of the earnings of the leased railways as renewals of some of the other cars in pursuance of the lease as mentioned in the same answer were subject to the mortgage according to its provisions and by the law of Vermont mentioned in the answer.

7. That the trustee is not chargeable for any cars that were not in this State at the time of the attachment.

8. That the trustee is not chargeable for any cars that are not ascertained to have been in this State at the time of the attachment.

9. That the trustee is not chargeable for any cars that were making regular passages in trains or about to depart on a

regular passage within forty-eight hours at the time of the attachment.

10. That the trustee is not chargeable for the passenger car destroyed by fire in November, 1894.

11. That the trustee is not chargeable for any of the cars as it was bailee of the same for its own use for hire until it returned them to the defendant in Vermont in pursuance of the terms of the bailment.

12. That the trustee is entitled to be discharged notwithstanding the order of June 21, 1898, charging the trustee generally upon its answers then filed as its additional answer since filed and amending its former answers has removed from those answers the statements upon which that order was based.

13. That if the trustee is precluded by the order of June 21, 1898, from being discharged then the trustee ought to be charged only for a nominal sum.

14. That in the seven cases Nos. 62–68, if the trustee is chargeable for anything it should be charged subject to the rights of the plaintiffs in the other actions in which simultaneous attachments were made.

15. That in the four cases Nos. 69–72, if the trustee is chargeable for anything it should be charged subject to the rights of the plaintiffs in the other actions in which simultaneous attachments were made and also subject to the prior attachments made in the other actions.

The counsel for the plaintiffs requested the judge to rule that the trustee was chargeable for all the money standing to the credit of the defendant in the account mentioned in its answers and for all the cars mentioned in its answers as being in its possession and marked with the name of the defendant.

The judge made the following findings and rulings:

1. The court assumes that the facts stated in the answers of the trustee must be accepted as true, even when stated on information and belief. The additional answer admits that at the time of the service of the writs of trustee process upon the trustee it had in its hands and possession the sum of $29,362.31 standing upon its books to the credit of the defendant.

2. A part of the sum in the possession of the trustee, namely, $16,521.42, was payable to the defendant as the agent of the

Grand Trunk Railway and other railroad companies on account of traffic over their respective lines. For this part of the money in its hands the trustee was not charged.

3. Another part, namely, $2,154.18, of the sum in the possession of the trustee, was payable to the defendant for business transacted upon the railroad of the Ogdensburg and Lake Champlain Railroad Company, of which the defendant held a lease, by assignment. This sum was alleged to be subject to a trust, but the facts were not set forth with sufficient fulness by the trustee to show that the money when paid to the defendant might not be held by it free from any trust and subject to attachment for its debts. For this sum of $2,154.18 the trustee was charged.

4. Another portion, namely, $10,686.71, of the sum in the possession of the trustee was payable to the defendant for business transacted upon the railroad of the Consolidated Railway Company of Vermont, of which the defendant was lessee. This sum also was alleged to be subject to a trust, but the facts were not set forth with sufficient fulness by the trustee to show that the money when paid to the defendant might not be held by it free from any trust and subject to attachment for its debts. For this sum of $10,686.71 the trustee was charged.

5. For the cars in the hands and possession of the trustee at the time of the service of the writs of trustee process upon it the trustee was not charged.

6. Upon the whole case the trustee was charged for the sum of $12,840.89.

7. In each of the cases numbered 62 to 68 inclusive the trustee was charged subject to the rights of the plaintiffs in the other actions in which simultaneous attachments were made, including the two actions removed to the Circuit Court of the United States and prosecuted by the plaintiffs Webster and Schultis. Each plaintiff was found to be entitled to one ninth part of the fund for which the trustee was charged. If the aliquot part to which any plaintiff was entitled was more than sufficient to pay the judgment in his favor, the surplus was to go to the other plaintiffs having attachments made at the same time.

8. In each of the cases numbered 69 to 72 inclusive the trustee was charged subject to the prior attachments made in the nine actions above mentioned, and also subject to the rights

of the plaintiffs in the other actions in which simultaneous attachments were made, including the three actions removed to the Circuit Court of the United States and prosecuted by the plaintiffs Pope, Woodward, and Wade.

The ruling requested by the plaintiffs was refused, and the second and third rulings requested by the trustee were refused. The plaintiffs and the trustee respectively excepted to the refusal of these rulings, and each excepted to all of the rulings made in favor of the other.

The cases were argued at the bar in November, 1904, before *Knowlton*, C. J., *Morton*, *Lathrop*, *Barker*, & *Loring*, JJ., and afterwards were submitted on briefs to all the justices.

*J. L. Thorndike*, (*E. R. Thayer* with him,) for the Boston and Maine Railroad, trustee.

*R. M. Morse*, for the plaintiffs.

KNOWLTON, C. J. The question in these cases is whether the Boston and Maine Railroad, summoned as trustee, shall be charged upon its answers. The cases have been pending many years, and different answers have been filed at different times, and various proceedings have been had to determine the liability of the trustee. On December 1, 1902, an answer was filed in addition to and in amendment of the former answers, which purports to give with much fulness the facts in regard to the various questions now before us. We are of opinion that the previous proceedings do not affect the rights of the parties to rely upon this answer, in connection with the other answers, as stating facts upon which the cases should be decided.

Many of the statements are made upon information and belief. These statements, in the absence of anything in the record to control them, must be taken as true. *Willard* v. *Sturtevant*, 7 Pick. 194, 197. *Bostwick* v. *Bass*, 99 Mass. 469. *Clinton National Bank* v. *Bright*, 126 Mass. 535. *Emery* v. *Bidwell*, 140 Mass. 271, 274. *Seward* v. *Arms*, 145 Mass. 195.

It appears that the trustee had in its possession $16,521.42 which was due to the defendant on account of business done by other railroad companies whose railroads formed, with the railroads of the defendant and the trustee, continuous lines, of which only the railroad of the defendant joined that of the

trustee.   The total charge for all this business was collected either at the place of starting or at the place of destination, and was accounted for to the companies that were entitled to it.    For the sake of convenience it was a custom of each company having money to pay to the others, to pay to the one whose railroad adjoined its own, not only the amount due that company, but also all sums belonging to the other companies beyond, and the company receiving the money retained what was due to it and forwarded the residue.    Accounts were kept by each only with the companies owning the railroads next adjoining its railroad on each side of it, and the trustee kept an account only with the defendant, crediting to the defendant and paying it not only the sums due to it, but also the sums due on account of such business to the other companies, and no distinction was made in the accounts or items between money paid to the defendant as belonging to it and money paid to it belonging to the other companies.   Under these facts, money credited to the defendant on account of the earnings of railroads beyond its lines it would take only as the agent and trustee of such railroads.    This part of the case is covered by the decision in *Chapin* v. *Connecticut River Railroad*, 16 Gray, 69, which is shown by an examination of the papers on file to be identical with this case in its material facts.    See also *Seward* v. *Arms*, 145 Mass. 195.    For this money the trustee cannot be charged.

The answer shows that $2,154.18 was held by the trustee, which was due to the defendant on account of earnings from business done on the Ogdensburg and Lake Champlain Railroad. This road the defendant was operating under a lease with many special covenants, given by that corporation to the Consolidated Railroad Company of. Vermont, and assigned by a formal assignment and by another elaborate instrument of transfer to the defendant.    Under the original lease all of the gross receipts from the business and traffic of the railroad and other property were to be received by the lessee, and were to be disposed of by it in the manner stated.    The lessee then covenanted to keep and maintain the railroad and its equipments and all property pertaining to it in good order and condition, making renewals of cars and engines and other things needed; to pay all taxes and assessments upon the property, and to pay expenses of meet-

ings of directors and stockholders of the lessor, to assume and pay the expenses of pending litigation, to fulfil outstanding contracts and obligations of the lessor, to assume all obligations of the lessor that might afterward be incurred by statute or at common law as common carrier, warehouseman or otherwise, and indemnify and save harmless the lessor from all costs, damages or loss by reason of any failure to fulfil these obligations, and by reason of any claim that might arise from the maintenance and operation of the railroad and other property, to keep policies of insurance in force for the benefit of the lessor upon the buildings, bridges and docks of the lessor and other property then kept insured by it, and, in the discretion of the lessee, to keep in force such policies of insurance as it might deem advisable to protect it from loss by virtue of its liability as a common carrier.　The lessee was also to keep accurate accounts of its earnings and income from the railroad and other property, and of its expenses and disbursements concerning the same, open to the inspection of the lessor, and was to furnish the directors of the lessor whenever called upon with accurate accounts and statements of the receipts and disbursements concerning the railroad and other property, to the end that the directors might, from time to time, determine the amount of net earnings applicable to the payment of interest on certain bonds outstanding against the lessor.

The lessee then covenanted with the lessor that the gross earnings, income and receipts from the business of the railroad and other property, should be disposed of, first, for the payment of the obligations hereinbefore mentioned, and the other expenses of the maintenance, operation, use, development and improvement of the railroad and other property, and the payment of certain floating indebtedness specified in a schedule, second for the payment of interest on certain first mortgage bonds outstanding against the lessor, and afterwards to the payment of interest on certain other bonds of different classes, and then that the residue and remainder should be divided equally between the parties.

The contention of the trustee is that all the gross earnings of this railroad which the defendant collected in its management of the property, it received and held as a trustee, and that the

money in its hands was not subject to attachment for its debts or liabilities incurred in the business or otherwise. We are of opinion that this contention is not correct. The defendant was in the possession and control of the railroad. It was bound to the lessor by a variety of covenants which created a direct liability at law. It was its duty, as the lessee in possession of the railroad, to conduct the business, and in so doing to contract· debts from day to day in the operation of the railroad, as if it were the owner. It was its duty to pay these debts, and the payments were to be deducted from the gross earnings to determine the net earnings in which the lessor had an interest. Upon the theory of the trustee in this case the defendant was acting as a trustee in the possession and operation of the railroad, and in the collection of every bill for the transportation of merchandise, and in incurring every debt that it contracted in the course of the business. Upon this theory, every one who had a valid claim, small or great, whether in contract or in tort, growing out of its possession and operation of the railroad, was a *cestui que trust* under the instrument, and could bring a suit in equity to have the trust enforced against the gross earnings for his benefit. We do not think that this is the true construction of the instrument. We are of opinion that the debts contracted in operating the railroad were primarily the lessee's debts, and that the lessee was expected to collect the earnings as primarily its own moneys, keeping accurate accounts of what it received and paid out. Much of the indebtedness contracted, which the defendant had a right to pay, depended to a large extent upon the exercise of its discretion. It hardly could have been intended that there should be a specific trust affecting the gross earnings in reference to the payment of every item of the operating expenses. The general provisions of the instrument indicate that the lessee was to conduct the business as a proprietor and not as a trustee, and that its possession and control should be that of a lessee bound by the covenants of the instrument.

If at any time the lessee should be guilty of such a breach of its contract as would put in peril the rights of the lessor, probably the lessor would have a remedy in equity for the protection of its interests. But in reference to such a condition

there is a provision for a re-entry and termination of the lease by the lessor, similar to that contained in common leases. We are of opinion that so long as the defendant was left in possession and control of the property and assets, it could receive the gross income as its own money and use it for the payment of its own debts, holding itself accountable to make payments under its covenants. The cases of *Grand Trunk Railway* v. *Central Vermont Railroad*, 78 Fed. Rep. 690, *Grand Trunk Railway* v. *Central Vermont Railroad*, 81 Fed. Rep. 60, and *Welden National Bank* v. *Smith*, 86 Fed. Rep. 398, all of which relate to this instrument, do not seem to us inconsistent with this view. Of course after the property came into the hands of a receiver appointed by a court of equity, the court would marshal and appropriate income which accrued to the receiver, according to the requirements of the contract under which he held. We are of opinion that the trustee is chargeable with this sum, as money subject to attachment for the defendant's debts.

The sum of $10,686.71, due to the defendant on account of earnings of the Consolidated Railroad Company of Vermont, stands in much the same way. The defendant had a lease of this railroad and the property pertaining to it for ninety-nine years. Its provisions, differing somewhat in details, are very similar to those of the lease which we have just been considering. It contains a provision for an entry and a termination of the lease in case of breach of covenant continued for three months after a notice in writing from the lessor. We are of opinion, for reasons just stated, that the money received for gross earnings of the railroad, so long as the lessee was in undisturbed possession in the performance of its covenants under the lease, was to be taken and held as its own money and accounted for to the lessor. We are of opinion that the trustee is chargeable for this sum also.

The remaining question is whether the trustee is chargeable on account of the cars of the defendant which it had in its possession. Of these, two, which were marked with the defendant's name, belonged to the Burlington and Lamoille Valley Railroad Company, and twenty-five others so marked belonged to the Ogdensburg Car Company. The plaintiffs do not contend that the trustee should be charged for these cars. One

hundred and seventeen of the other freight cars and three
passenger cars and two baggage cars were a part of the property
leased to the defendant by the Consolidated Railroad Company
of Vermont with its railroad, on June 30, 1884, by an instrument
already referred to. They were also covered by a prior mort-
gage made by the last mentioned corporation and the Vermont
and Canada Railway Company to the American Loan and
Trust Company, which included their respective railroads, to
secure the payment of certain bonds, which mortgage was then
in full force, although it has since been foreclosed by a sale of
the property. The only title of the defendant was, therefore,
that of a lessee for ninety-nine years under an instrument
containing many covenants, among which was a covenant to
keep this property in good condition and replace it with other
like property when worn out, and a covenant giving the lessor
a right at any time, after a short notice, to enter and take
possession and terminate the lease for a breach of covenants.
Such a title is not an ownership which subjects the property
to attachment, in the absence of statutory provisions giving a
right of attachment.

In Vermont there are statutes, relating to furniture, cars and
engines of railroad companies, which indicate a general purpose
of the Legislature to subject them to attachment for debts and
liabilities incurred in the management and operation of the rail-
road. R. L. of Vermont, 1880, §§ 3300, 3353 and 3443. The
second of these sections makes all such property a part of the
realty which passes under a mortgage when such a conveyance
of a railroad is made. But it leaves it liable to attachment and
execution against the mortgagor on a claim for an injury sus-
tained on the railroad by negligence of the corporation, or for
services rendered, or materials furnished to keep the road in
repair, or to operate the same, or for liabilities as a common
carrier. This section gives no right to attach such property of a
railroad corporation upon a claim against a lessee of the railroad.

Section 3443 is broader, giving a right to attach cars, engines
and other property used in the operation and management of a
railroad, upon a claim for an injury to person or property by the
corporation operating the railroad, provided the property has at
any time been owned by the corporation liable for the injury.

This section would give a right to attach the cars in these actions, if the cars had at any time been owned by the defendant.

It is contended that the title of the defendant as lessee was an ownership within the meaning of this section. But we are of opinion that this title, which was subject to be terminated at any time on short notice for a breach of covenant, and which was subject to a prior mortgage that made the property a part of the realty held by the mortgagee, and was also subject to a covenant to keep it in good condition for the benefit of the lessor and to return it or other like property in its place at the termination of the lease, was not an ownership within the meaning of this section. It follows, therefore, that as to these cars the defendant had no such title, either at common law or under the statutes of Vermont, as was necessary to subject the property to attachment upon a claim against it.

There are five cars that stand a little differently. These were not acquired by the defendant under its lease, but were bought and put upon the railroad in performance of a covenant in the lease to keep the rolling stock in good condition and to replace it when worn out. Perhaps it might be held that these cars were owned by the defendant at the time of the attachment, or had been owned by it, and were within the terms of § 3443 above referred to. Assuming this in favor of the plaintiffs, there are other grounds on which the trustee is discharged from liability on account of them. The passenger car number 86 and mail car number 50 were making a regular passage on a train passing over the trustee's railroad to Boston, and were intended, after completing the passage, to depart again within forty-eight hours upon a regular return passage from Boston over the trustee's railroad and other railroads, to a railroad of the defendant, and did so depart and make such return passage. The baggage car number 22 was making a regular passage upon another train through New Hampshire under similar conditions. The freight car number 5318 was also in transit, and according to the answer, was then making a regular passage in a train passing over the railroad of the trustee, which was about to stop at different stations on the way, and the fixed times of its departure from such stations were on the same day. These cars were all within the provisions of R. L. c. 167, § 39, and

could not be attached, in the absence of a demand by the officer for other property upon which to make the attachment equal in value to the *ad damnum* in the writ.

It is contended that this section does not apply to an attachment of cars and engines by trustee process. But we are of opinion that it does. There is no exception in the language, and the reason for its application is as strong in one case as in the other. On service of trustee process the party having possession of the cars and engines could not protect itself against the effect of allowing them to go back into the hands of the defendant without holding them and preventing the running of the trains. These cars cannot be held under the attachment.

The only other car referred to in the answer is freight car number 7828 which was on a side track in Vermont. Effect could not be given to an attachment of this car unless the trustee should bring it to Massachusetts, and there, at the proper time, deliver it to the officer holding the execution. The trustee was under no obligation to do this. The R. L. c. 189, § 59, applies only to property which the trustee is bound by contract to deliver at a certain time and place within the Commonwealth. But the rule there stated is analogous to the general principle which is applicable to attachments by trustee process. While we do not determine that under no circumstances can an attachment by trustee process of specific property outside of the Commonwealth be made effectual, we are of opinion that as a general rule, and upon facts like those in this case, such an attempted attachment is invalid. Our courts have no jurisdiction over the property itself while it is in another State, and we have no authority over the trustee to compel him to bring it here. *Van Camp Hardware & Iron Co.* v. *Plimpton,* 174 Mass. 208, 211. The trustee cannot be charged on account of the possession of this car.

The result is that the trustee is to be charged according to the order and ruling of the judge of the Superior Court.

*So ordered.*