ADOLPH ROSENBUSH & others *vs.* FERDINAND BERNHEIMER
& another, & trustee.

Suffolk.   November 16, 1911. — February 29, 1912.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DeCOURCY, JJ.

*Trustee Process. Carrier. Constitutional Law,* Obligation of contracts, Due process of law, Interstate commerce.

A carrier may be charged in trustee process as the trustee of the owner of goods, which are in his hands for transportation to such owner as consignee, although when the writ was served the goods were packed in cases and the carrier knew of the contents of the cases only by information, if it appears that the goods were of value and belonged to the defendant.

Where the answer of one summoned as trustee by trustee process discloses property of the defendant in his hands, it cannot be assumed in his favor that his pecuniary interests will be affected adversely by charging him as trustee, if this does not appear from the statements in his answer or from facts agreed or proved outside the answer.

A carrier having in his hands cases of goods lying on a wharf for the purpose of

immediate transportation to their owner as consignee may be charged in trustee process as trustee of such owner.

The statutes of this Commonwealth providing for the attachment of goods by trustee process cannot be held to violate the Constitution of the United States by affecting the performance of contracts for the carriage of goods entered into when those statutes long had been in force.

The statutes of this Commonwealth providing for the attachment of goods by trustee process, as applied to charging a carrier as the trustee of the owner of goods in his hands for transportation, are in accordance with the requirements of the Fourteenth Amendment of the Constitution of the United States as to due process of law.

The statutes of this Commonwealth providing for the attachment of goods by trustee process, as applied to charging a carrier engaged in interstate commerce as the trustee of the owner of goods in the hands of the carrier for immediate transportation to another State, are not in conflict with the Constitution of the United States, art. 1, § 8, giving Congress power "to regulate commerce with foreign nations, and among the several states."

CONTRACT, by the members of a partnership doing business in Boston, against the members of a partnership doing business in Baltimore in the State of Maryland, for the price of merchandise alleged to have been sold by the plaintiffs to the defendants. The Merchants and Miners Transportation Company, a corporation organized under the laws of the State of Maryland and having a usual place of business in Boston, was named in the writ as trustee and was served as such trustee on August 4, 1910. No service was made on the defendants. The writ was dated August 3, 1910.

The answer of the alleged trustee admitted the receipt on August 3 and 4, 1910, of certain cases said to contain boots, shoes and rubbers at its terminal in Boston for transportation to Baltimore, that all the goods received on August 3 were on its wharf at the time of the service of the plaintiff's writ upon it, and that all of the goods were consigned to the defendants, at Baltimore. The answer concluded as follows: "All of said goods were received by the alleged trustee for immediate transportation from said Boston to said Baltimore. On the respective dates said goods were received by the alleged trustee, it issued through bills of lading covering the transit of the same from Boston to Baltimore. The alleged trustee, therefore, says that such of the goods above mentioned as may have been in its hands or possession at the time of the service of the plaintiffs' writ were in its hands or possession for the purpose of being transported from said Boston to said Baltimore, and were strictly articles of interstate commerce and were held by

it strictly in its capacity of an interstate carrier, so that the same were not attachable in this proceeding."

In the Superior Court the case came on to be heard by *Richardson*, J., upon a motion of the plaintiffs to charge the alleged trustee. At the hearing on this motion "it was agreed by counsel for the purposes of the motion that title to the goods mentioned in the alleged trustee's answer was in the defendants."

The alleged trustee asked for thirteen rulings, which concluded as follows:

"10. Upon the facts now appearing the alleged trustee must be discharged.

"11. Upon the facts now appearing an order charging the alleged trustee would constitute an impairment of the obligation of the contract of carriage existing between the alleged trustee and the consignees of the goods contrary to the Constitution of the United States, so that the alleged trustee must be discharged.

"12. Upon the facts now appearing an order charging the alleged trustee would deprive it of its property without due process of law contrary to the Constitution of the United States and to the Fourteenth Amendment thereof, so that the alleged trustee must be discharged.

"13. Upon the facts now appearing an order charging the alleged trustee would constitute an interference with interstate commerce contrary to the laws and the Constitution of the United States, so that the alleged trustee must be discharged."

The judge refused to make any of the rulings requested by the alleged trustee, and made the following order:

"It being agreed in open court that the title to the property described in the answer of the Merchants and Miners Transportation Company was in the defendants, it is ordered that the Merchants and Miners Transportation Company be charged upon its answer as trustee of the defendants for all the merchandise, described in its answer, delivered and in its possession before and at time of the service of the plaintiff's writ, subject to the trustee's rights for charges, expenses or liens, if any, it may have upon or on account of said merchandise by reason of any contract or agreement for the transfer of the same according to R. L. c. 189, § 60, or otherwise."

Being of opinion that this order ought to be determined by this court before any further proceedings in the Superior Court, the judge, at the request of the alleged trustee and with the assent of the plaintiffs, reported the case for such determination.

*H. S. Davis,* (*A. N. Williams* with him,) for the alleged trustee.

*Lee M. Friedman,* (*R. I. Dimond* with him,) for the plaintiffs.

RUGG, C. J.   This is an action of contract.   The defendants are non-residents of this Commonwealth, upon whom no personal service has been made, and who have not appeared.   The question is whether the Merchants and Miners Transportation Company shall be charged by reason of an attachment under the trustee process of property in its hands under these circumstances:   The Merchants and Miners Transportation Company is a common carrier incorporated under the laws of Maryland, whose steamships ply between Boston and Baltimore.   On August 3, 1910, it received from various persons at its Boston terminal for immediate transportation to Baltimore certain cases said to contain shoes consigned to the defendants at Baltimore, and on the same day it issued therefor through bills of lading covering transit from Boston to Baltimore.   The plaintiff's trustee writ was served on the transportation company on August 4, while the cases of shoes were upon its wharf in Boston awaiting shipment.   It is agreed for the purposes of this case that the title to the goods was in the defendants.

1. The transportation company contends that it is not enough to show at the trial that the goods belonged to the defendants, but that it must appear further that at the time the writ was served the carrier knew or should have known that the goods belonged to the defendants.   This ground is not tenable.   The defendants were consignees named in the bill of lading, which was some evidence of title.   *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154. *The Sally Magee,* 3 Wall. 451, 457.   *Lawrence* v. *Minturn,* 17 How. 100, 107.   Moreover, the fact of ownership in trustee process is the one ultimately to be determined upon the answer of the trustee, or if not discovered therein, by other evidence.   R. L. c. 189, § 15.   *Phillips* v. *Meagher,* 166 Mass. 152.   *Corsiglia* v. *Burnham,* 189 Mass. 347.   It is agreed that the defendants were in truth the owners of the goods.

2. The trustee further contends that, as it does not know of its own knowledge the contents of the cases and had no authority to open them, it cannot be held as trustee under *Bottom* v. *Clarke,* 7 Cush. 487. But that case is plainly distinguishable. It is enough for this purpose that the carrier was informed as to the contents of the boxes, and that they were goods of value.

3. The transportation company has argued ingeniously that it ought not to be charged as trustee, on the ground it had a right to transport the goods for the purpose of earning freight, and to deprive it of this right would be to put it in a worse position pecuniarily by means of the trustee process than it otherwise would be in toward the defendants, citing among other cases *Staniels* v. *Raymond,* 4 Cush. 314, and *Van Camp Hardware & Iron Co.* v. *Plimpton,* 174 Mass. 208, 210. The right of the carrier by water to earn freight has been said to accrue when "the goods are shipped and the voyage is commenced." *M'Gaw* v. *Ocean Ins. Co.* 23 Pick. 405, 410. Here the voyage had not commenced. In passing it may be observed that this contention was raised in *Davis* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway,* 217 U. S. 157, at 164, but was given scant consideration by the court. But it is not necessary to discuss the soundness of this proposition, for the reason that it is not raised by the answer of the transportation company. Its answer discloses possession of property belonging to the defendants, and the only cause set out for not being charged as trustee is that the property was a subject of interstate commerce, and hence not attachable in this process. The answer makes no assertion of right to possession for the purpose of earning freight. Where the answer of the trustee discloses property, he should be charged, unless facts appear which require him to be discharged. It cannot be assumed in his favor without statement in his answer or facts agreed or proved outside the answer that his pecuniary interests will be adversely affected.

4. These being the facts, the case is governed by *Adams* v. *Scott,* 104 Mass. 164, where a common carrier was charged as trustee on his answer that he had in his possession a valuable package for transportation belonging to the defendant. To the same effect are *Cornell* v. *Mahoney,* 190 Mass. 265, *Union Mutual Life Ins. Co.* v. *Holbrook,* 4 Gray, 235, and *Landa* v. *Holck,* 129 Mo. 663. See also *Cox* v. *Central Vermont Railroad,* 187 Mass. 596, 609.

It is plain from St. 1905, c. 324, which expressly exonerates the common carrier in the absence of fraud or collusion from liability for failure to transport and deliver goods held in its hands by attachment under trustee process, that these decisions thus interpreting the trustee process statutes have been accepted and adopted as a legislative policy. See also St. 1910, c. 214. The case at bar is plainly distinguishable from *Van Camp Hardware & Iron Co.* v. *Plimpton,* 174 Mass. 208, in that the goods had not been loaded on ship, and were not in transit, but were lying on the wharf, and it does not appear that it would cause the transportation company any expense to segregate them. It is not necessary to analyze the numerous cases cited by the transportation company, like *Stevenot* v. *Eastern Railway of Minnesota,* 61 Minn. 104, *Baldwin* v. *Great Northern Railway,* 81 Minn. 247, and *Bates* v. *Chicago, Milwaukee & St. Paul Railway,* 60 Wis. 296, where under different circumstances carriers have been held not liable to garnishment.

5. The goods were "consigned to Bernheimer Bros., Baltimore." Hence the through bills of lading issued by the transportation company were non-negotiable, and the goods were apparently subject to attachment by trustee process under the uniform bills of lading act. See St. 1910, c. 214, §§ 4, 24, 33, 53.

6. It has been argued in behalf of the transportation company that the statute permitting attachment of goods by trustee process is obnoxious to the provision of the Federal Constitution forbidding any State to pass any law which impairs the obligation of a contract. There is nothing in this contention. As was said by Mr. Justice Swayne, in *Edwards* v. *Kearzey,* 96 U. S. 595, at 603, respecting the impairment of contract clause, "The inhibition of the Constitution is wholly prospective. The States may legislate as to contracts thereafter made, as they may see fit. It is only those in existence when the hostile law is passed that are protected from its effect." *King* v. *Dedham Bank,* 15 Mass. 447. *Oshkosh Waterworks Co.* v. *Oshkosh,* 187 U. S. 437, 439. *Kuhn* v. *Fairmount Coal Co.* 215 U. S. 349, 368. Our statute providing for attachment by trustee process was in existence long before the events here in controversy.

7. The same considerations dispose of the transportation com-

pany's position that the statute as thus interpreted operates to deprive it of its property right secured by the contract without due process of law. The statute was in existence at the time the contract of the transportation company was entered into. If it is otherwise a constitutional exercise of legislative power, it is not rendered invalid by the circumstance that it affects in some degree the common law freedom of action of persons. All contracts are made subject to existing laws, even though such laws might not be operative if intended to be retroactive. This statute comes plainly within the requirements of the Fourteenth Amendment to the Federal Constitution as to due process of law as defined in many decisions of the Supreme Court of the United States. In *Leeper* v. *Texas*, 139 U. S. 462, at 467, 468, Chief Justice Fuller said: "It must be regarded as settled . . . that law in its regular course of administration through courts of justice is due process, and when secured by the law of the State the constitutional requirement is satisfied; and that due process is so secured by laws operating on all alike, and not subjecting the individual to the arbitrary exercise of the powers of government unrestrained by the established principles of private right and distributive justice." See also *Hagar* v. *Reclamation District*, 111 U. S. 701; *Turpin* v. *Lemon*, 187 U. S. 51, 58.

8. The final ground urged against charging the trustee is that such action would constitute an interference with interstate commerce. It is necessary to determine precisely the nature of trustee process. It is simply one means of attaching property. It has never been decided by any court, as far as we are aware, that property of a debtor was not subject to ordinary attachment at the instance of his creditors merely because it was in process of transportation from one State to another. Immunity from liability to attachment for this cause would afford an easy means for fraudulent debtors to secure exemption of property from payment of debts. The purpose of the statute providing for attachment by trustee process is a laudable one. Its primary design is to enable a creditor to obtain security for his claim. The stability of commercial obligations and the facility of business intercourse between individuals in different States and nations rests in no small measure upon faith in the continuance of established methods of collection of debts. The honor of merchants is supported by the

efficiency of law.  Payment of matured legal promises is a duty enforced alike by considerations of morality and civil law.  Remedies to compel the performance of this duty have been provided by the common law for many centuries.  Statutes giving greater or less right of attachment of goods, effects and credits in the hands of others than the debtor have been enacted in most, if not all, the States of the Union.  Statutes providing some extent of attachment by trustee process have existed in this Commonwealth for more than two hundred years, although a full measure of relief was not given until St. 1794, c. 65.  See Prov. St. 1708–9, c. 7.  It was exemplified in a custom of the Merchants of London as early as 1481.  See Drake on Attachment, §§ 1–8.  This method of obtaining a lien for the payment of a debt contemporaneously with the commencement of an action for its collection must have been familiar in some of its phases to most of the members of the convention which framed the Federal Constitution.  The constitutionality of such statutes in their operation within the States upon property not in interstate commerce has never been questioned, and cannot be doubted.  They are wholly general in scope, and apply equally to all kinds of property within the jurisdiction so made liable to attachment.  They do not relate particularly or primarily to interstate commerce.  If the application of the law occasionally affects articles of interstate commerce, this is a mere incident of a statute operating widely as to aspects of business intercourse which have always been within the jurisdiction of the several States.  It cannot be presumed that the fathers in conferring upon Congress power "to regulate commerce with foreign nations, and among the several states" intended to withdraw from a legal process so universal in its use and generally beneficent in its operation as attachment, either direct or by trustee process, all property, which might be in interstate commerce.  It seems plain on principle that attachment laws of the character here in question are not obnoxious to any provision of the Federal Constitution or laws.  This is the effect of *Adams* v. *Scott*, 104 Mass. 164, in which the article held subject to trustee process was in transit in interstate commerce, although this point was not there discussed.

The decisions of the Supreme Court of the United States support this view.  The laws of the several States "enforcing attachment and execution in cases cognizable in State courts have been

sustained and upheld. *Johnson* v. *Chicago & Pacific Elevator Co.*
119 U. S. 388–398." *The Winnebago,* 205 U. S. 354, 362. While
the enforcement of our trustee attachment statute may now and
then temporarily interfere with interstate commerce, such inter-
ruption "is incidental only, is almost inseparable from the com-
pulsory enforcement of liabilities of the class in question, is not
in conflict with any regulation of Congress, and does not in itself
offend against the commerce clause of the Constitution." *Martin*
v. *West,* 222 U. S. 191, at 198. The transportation company
relies on this point upon cases collected in the footnote.* They
are all disposed of, however, contrary to its contention, by *Davis*
v. *Cleveland, Cincinnati, Chicago & St. Louis Railway,* 217 U. S.
157, a decision which is binding upon all State and federal courts,
so far as it is an interpretation of the Constitution or statutes of the
United States. In that case cars engaged in interstate commerce
were held subject to attachment upon garnishment upon process
issuing from a State court in accordance with a State statute,
notwithstanding their connection with interstate commerce. The
court said at page 177: "It is very certain that when Congress
enacted the Interstate Commerce Law it did not intend to abro-
gate the attachment laws of the States. It is very certain that
there is no conscious purpose in the laws of the States to regulate,
directly or indirectly, interstate commerce. We may put out of

---

* *Wall* v. *Norfolk & Western Railway,* 52 W. Va. 485. *Johnson* v. *Union
Pacific Railroad,* 145 Fed. Rep. 249. *Johnson* v. *Union Pacific Railroad,* 29
R. I. 80. *Stevenot* v. *Eastern Railway of Minnesota,* 61 Minn. 104.

Other cases to the same effect are: *Michigan Central Railroad* v. *Chicago
& Michigan & Lake Shore Railroad,* 1 Ill. App. 399; *Connery* v. *Quincy,
Omaha & Kansas City Railroad,* 92 Minn. 20; *Seibels* v. *Northern Central
Railway,* 80 S. C. 133; *Chicago & Northwestern Railway* v. *Forest County,*
95 Wis. 80; *Davis* v. *Cleveland, Cincinnati, Chicago & St. Louis Railway,*
146 Fed. Rep. 403. See *Missouri Pacific Railway* v. *Kennett,* 79 Kans.
232.

It may be noted that decisions of the State courts are not unanimous, the
conclusion of the opinion being supported by *DeRochemont* v. *New York
Central & Hudson River Railroad,* 75 N. H. 158; *Cavanaugh* v. *Chicago, Rock
Island & Pacific Railway,* 75 N. H. 243; *Southern Flour & Grain Co.* v.
*Northern Pacific Railway,* 127 Ga. 626; *Southern Railway* v. *Brown,* 131 Ga.
245; *Humphreys* v. *Hopkins,* 81 Cal. 551. See *Starkey* v. *Cleveland, Cin-
cinnati, Chicago & St. Louis Railway,* 114 Minn. 27.

the case, therefore, as an element an attempt of the State to exercise control over interstate commerce in excess of its power. . . . The questions in the case, therefore, depend for their solution upon the interpretation of Federal laws. May the laws of the States for the enforcement of debts (laws which we need not stop to vindicate as necessary foundations of credit and because they give support to commerce, state and interstate), and the Federal laws which permit or enjoin continuity of transportation, [be] so far incompatible that the provisions of the latter must be construed as displacing the former? We do not think so." And on page 179 it was said further, in discussing whether such attachment was inconsistent with the interstate commerce law: "The State may pass laws enforcing the rights of a citizen which affect interstate commerce, but fall short of regulating such commerce in the sense in which the Constitution gives exclusive jurisdiction to Congress. *Sherlock* v. *Alling*, 93 U. S. 99, 103. *Kidd* v. *Pearson*, 128 U. S. 1, 23. *Pennsylvania Railroad* v. *Hughes*, 191 U. S. 477. . . . The interference with interstate commerce by the enforcement of the attachment laws of a State must not be exaggerated. It can only be occasional and temporary." See also *Chicago, Rock Island & Pacific Railway* v. *Arkansas*, 219 U. S. 453, and cases collected in footnote to *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, at 578.

It follows that the attachment by trustee process of the cases of shoes in the possession of the transportation company was valid, and that the company should be charged.

*Order of Superior Court affirmed.*