**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

No. 08-2477

SAL LATORRACA, et al.,

Plaintiffs, Appellees,

v.

TANIKI FINANCIAL CORP.,

Claimant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Lipez, Circuit Judge,
Souter, Associate Justice,[*]
and Selya, Circuit Judge.

Joseph P. Calandrelli, with whom Joseph D. Steinfield and Prince, Lobel, Glovsky & Tye LLP were on brief, for appellant.
Patrick T. Egan, with whom Glen DeValerio, Abigail R. Romeo, and Berman DeValerio were on brief, for appellees.

August 18, 2010

---

[*] The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**LIPEZ, Circuit Judge**. This appeal involves a challenge to the use of trustee process to satisfy, in part, an outstanding judgment against defendant Emmanuel Pinez. The plaintiffs in this case, victims of a securities fraud and insider trading scheme, won a class action judgment of over $207 million against Mr. Pinez. In an attempt to satisfy that judgment, they moved to attach by trustee process a securities account at H&R Block. Although the account is held in the name of Taniki Financial Corporation -- an entity nominally controlled by Mr. Pinez's ex-wife, Rachel Pinez -- the plaintiffs claim that the account was funded with "ill-gotten gains transferred by Mr. Pinez to Taniki" and that Mr. Pinez retains a legal or equitable interest in the account.

In late 2005, the district court granted the plaintiffs' ex parte motion to attach the account and summoned H&R Block as trustee. H&R Block did not file an answer at the time. In early 2008, the plaintiffs moved to expand their attachment to capture the increased value of the account and to charge H&R Block as trustee by default. See Mass. Gen. Laws ch. 246, § 18 ("A person who, being duly summoned as a trustee, neglects to appear and answer as hereinbefore provided shall be defaulted and adjudged a trustee."). Taniki then joined the action, claiming ownership of the H&R Block account and requesting that the ex parte attachment be dissolved.

-2-

The district court denied the dissolution request and granted the request to expand the attachment, concluding that the funds in the account belong to Mr. Pinez. The district court then charged H&R Block as trustee "in the amount of $665,320 in partial satisfaction of the outstanding judgment against [Mr.] Pinez."[1] Taniki appeals from the district court's order.

Under Massachusetts law, a plaintiff may attach "goods, effects or credits" that belong to the defendant but are in the hands of a third party. Mass. Gen. Laws ch. 246, § 20. The trustee process, as it is called, has two key steps. First, the property must be secured by a trustee attachment, which is an interim remedy used to preserve the property so that it might later be taken on execution. See Knapp Shoes, Inc. v. Sylvania Shoe Mfg. Corp., 15 F.3d 1222, 1229 (1st Cir. 1994). Second, the party holding the property must be "charged" as trustee, meaning that there must be a final determination that he does, in fact, hold the "goods, effects or credits" of the defendant.

A trustee attachment can be obtained upon a preliminary showing that there "is a reasonable likelihood that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the amount of the trustee process over and

---

[1] The district court's decision to charge H&R Block as trustee was ultimately based on H&R Block's default. H&R Block has not appealed, and Taniki does not contest the validity of the default judgment. Instead, Taniki focuses on the district court's antecedent rejection of its claim to the account.

above any liability insurance . . . ." Mass. R. Civ. P. 4.2(c). As the language of the Rule suggests, a trustee attachment is usually sought prior to the entry of judgment on the underlying claim. The "central question" in such a case "is whether plaintiffs are likely to prevail on the merits and obtain damages in the necessary amount." Aetna Cas. & Sur. Co. v. Rodco Autobody, 138 F.R.D. 328, 332 (D. Mass. 1991) (internal citation and quotation marks omitted). If that question is answered in the plaintiffs' favor, the district court will issue a summons to the third party -- the alleged "trustee" -- which compels his appearance in court and requires him to hold the defendant's property "till judgment is obtained, or the action is otherwise disposed of, in order that [the property] may be taken on execution if the plaintiff obtains judgment against the defendant." Van Camp Hardware & Iron Co. v. Plimpton, 54 N.E. 538, 538 (Mass. 1899).

Although pre-judgment attachment is the norm, "there appears to be no prohibition against a plaintiff seeking approval of a trustee attachment after judgment has entered," as in this case. 48 Jordan L. Shapiro et al., Massachusetts Practice: Collection Law § 5:54 (3d ed. & Supp. 2010). It is not clear what, if anything, must be shown to obtain a post-judgment trustee attachment, since the plaintiff will have already prevailed on the merits of the underlying claim. See id. § 4:56 ("Once plaintiff has in fact recovered judgment, it appears that the plaintiff would

-4-

be able to satisfy the requirement of showing a 'reasonable likelihood' of recovery."). This appeal does not require us to confront that issue.

As noted, once the property is secured by an attachment, the focus shifts to whether the alleged trustee did, in fact, have "goods, effects or credits of the defendant in his hands or possession" at the time of the service of the trustee summons. L.S. Cushing, A Practical Treatise on the Trustee Process 93 (1833). To that end, the trustee must file an answer disclosing "plainly, fully and particularly what goods, effects or credits, if any, of the defendant" he possesses. Mass. Gen. Laws ch. 246, § 10. Depending upon the answer, further fact-finding may be necessary. See Mass. Gen. Laws ch. 246, §§ 12-17. If the court ultimately determines that the trustee holds "goods, effects or credits" of the defendant, the trustee will be "charged," judgment will enter against him, and he must then "pay over to the creditor or be subject to a trustee writ of execution." Gabovitch v. Lundy, 584 F.2d 559, 561 n.3 (1st Cir. 1978); see Mass. Gen. Laws ch. 246, §§ 39-44. The trustee may also be charged by default if he "neglects to appear and answer" within the applicable time period. Mass. Gen. Laws ch. 246, § 18.

At any time before judgment is entered against the trustee, additional parties may join the proceeding to claim a legal or equitable right to the property in the trustee's hands.

Georgeopoulos v. Georgeopoulos, 21 N.E.2d 267, 268 (Mass. 1939). Such claimants may allege and prove any facts that have not been stated or denied by the trustee. Mass. Gen. Laws ch. 246, § 33. If a claimant carries his burden of proving that he is the "true owner" of the property, or that his claim to the property is superior to that of the plaintiff, the trustee will be discharged and the claimant may recover the property. Georgeopoulos, 21 N.E.2d at 268; Meteor Prods. Co. v. Societe d'Electro Chimie et d'Electro Metallurgie, 161 N.E. 875, 876 (Mass. 1928); Hubbard v. Lamburn, 75 N.E. 707, 708 (Mass. 1905).

Taniki joined the proceedings as a claimant to the H&R Block account. The district court rejected Taniki's claim that it was the true owner of the property, however, finding that the H&R Block account was funded with Mr. Pinez's money and that Mr. Pinez retained an interest in the account.[2]

---

[2] The district court held that the plaintiffs "must demonstrate a reasonable likelihood that the funds held in the Taniki account are, in fact, the property of [Mr.] Pinez." We find nothing in the Massachusetts law of trustee process that would call for applying the "reasonable likelihood" standard to the ownership issue. The issue before the district court was whether Taniki was, in fact, the true owner of the property. As the parties acknowledge, the district court essentially found that Taniki was not the true owner of the property, and that the funds in the account were owned by Mr. Pinez. Taniki has challenged only the sufficiency of the evidence underpinning that ownership finding; it made it clear at oral argument that it views this as a "failure of proof case." We also note that the district court and the parties have assumed that any funds traceable to Mr. Pinez, and any assets purchased with such funds, are subject to attachment and execution on trustee process. As we did in a related appeal, "[w]e accept the assumptions of the parties but do not independently endorse

In Taniki's view, the plaintiffs presented insufficient evidence to justify that conclusion. We disagree. The funds in the account were deposited over a fourteen-month period that corresponded with Mr. Pinez's fraud and insider trading activity, and there is evidence that Mr. Pinez deposited over $1.5 million into other accounts held in Taniki's name during that same period. There is no evidence that the Taniki account was used outside of that fourteen-month period; the account lay dormant for at least six years after the last of the original deposits was made. It is also undisputed that two of the deposits were made by Stanbridge Limited, an entity controlled by Mr. Pinez, and that another deposit corresponds in date and amount to a check drawn on Mr. Pinez's personal bank account.

Against this large body of circumstantial evidence, Taniki and Ms. Pinez have presented only uncorroborated claims that Ms. Pinez deposited most of the funds into the Taniki account herself. Ms. Pinez also claims that the Stanbridge Limited deposits were intended as repayment for a loan that she had previously made to Mr. Pinez. However, the district court did not credit these self-serving assertions and resolved the evidentiary dispute in the plaintiffs' favor. It did not err in so doing. Simply put, the evidence strongly supports the finding that Mr. Pinez used the Taniki account to store his own funds, and Taniki

them." SEC v. Lehman Bros., Inc., 157 F.3d 2, 5 (1st Cir. 1998).

and Ms. Pinez have not provided a convincing alternative explanation of the funds' provenance.[3]

**AFFIRMED**.

---

[3]    The record suggests a variety of other issues, but none of them has been briefed or argued before us.  This opinion should not be read, therefore, as deciding any issues other than those specifically discussed above.