UNITED DREDGING CO. v. CITY OF LOS ANGELES et al.

(District Court, S. D. California, S. D. January 12, 1926.)

1. Commerce ⬤⟲22—Steam dredging barge held engaged in maritime work and employees thereon not subject to local license requirements.

Steam dredging barge, engaged in work on navigable waterways under contract with United States, *held* engaged in maritime work, and employees were not subject to local municipal regulations requiring operators of steam boilers and apparatus to be licensed.

2. *Commerce* ⬤⟲10—Municipality may impose reasonable police regulations on maritime craft, if federal government has not taken possession of field.

Municipality, in interest of safety, may impose reasonable police regulations on maritime craft, if federal government has not taken possession of field.

3. Commerce ⬤⟲10—Federal statute held to exclude local regulations of seagoing dredger barges.

Shipping Act 1908, § 10 (Comp. St. § 8178), providing for inspection of seagoing barges, *held* to authorize inspection of dredger barges and their boilers, and exclude local license regulations, even if federal officers charged with inspection did not inspect such barges.

In Equity. Suit by the United Dredging Company against the City of Los Angeles and others. Decree for plaintiff.

Overton, Lyman & Plumb, of Los Angeles, Cal., for plaintiff.

Jess E. Stephens, of Los Angeles, Cal., for defendants.

JAMES, District Judge. Plaintiff is engaged in operating a dredge for the purpose of deepening navigable waters in the harbor of Los Angeles, under contract with the United States government. Defendant city, by its ordinance, has created a board of mechanical engineers, which board is required to examine and license operators of steam boilers and steam-generating apparatus. By the ordinance it is made a misdemeanor for any person to operate such boilers or apparatus without having been duly licensed by the board of mechanical engineers. Employees of the plaintiff, engaged in operating a dredge in the harbor of San Pedro, were threatened with arrest because they had not been licensed by said city, authorizing them to be so employed. The city admits that it will, unless restrained, cause the arrest of plaintiff's employees, and contends that in so doing it will act properly within the scope of the police power with which it is invested. Plaintiff, on the other hand, contends that

the city has no right or power to regulate or supervise the employees of the plaintiff, because: (1) Such employees are engaged in maritime work upon the navigable waters of the United States, and hence are seamen; (2) that the United States has acted to cover the field and provide for inspection of maritime craft, such as dredges employed upon navigable waters.

It was shown by the evidence that the dredge as used by the plaintiff is built in barge form, heavily constructed to withstand weather and water in the open sea, and that it is suited to and has been towed from point to point along the Pacific Coast. On one occasion it was shown that the dredge had withstood a heavy storm in the Pacific, when the towline had parted which connected it with a steamer or tugboat. Upon the barge body are mounted cabin structures, and the principal man in charge is called a captain or master. The master who was in charge of the dredge in question had served in that capacity for several years. He appeared to be experienced both in the operation of the dredge and in the handling of it while under tow. The boilers and engine constitute the mechanical equipment, all of which are used solely for the purpose of operating the dredging shovels. The dredge possesses no means of self-propulsion.

[1] The effort of the city was to show under the first head that a barge, in order to be the subject of maritime jurisdiction, must be engaged in commerce as a carrier either of freight or passengers. I do not believe that such a limited classification comports with maritime practice. Here we have a large floating barge, entirely disconnected from the shore, except during the time that it may discharge through a pipe the matter lifted by it, engaged upon navigable waterways, deepening, widening, and clearing them for water-borne traffic, and being moved from place to place as the needs of navigation require. It operates, in the use we have described, in assistance to, and in aid of, navigation.

The Supreme Court of the United States, in Ellis v. U. S., 206 U. S. 246, 27 S. Ct. 600, 51 L. Ed. 1047, 11 Ann. Cas. 589, denominated scows and floating dredges as vessels within the admiralty jurisdiction, and held that the employees were "seamen." Judge Cochran, of the District Court of Kentucky, in Barnes Co. v. One Dredge Boat, 169 F. 895, has collected many authorities to the same point. By practical reasons this view is also supported. A dredge of the kind and char-

acter here involved, employed in its work of aiding navigation, is subject to continual change of location. Its work may place it within the corporate limits of one municipality one day and some other on the next, in endless rotation. It would be a substantial interference with its operation, if the men employed to manage the mechanical equipment were called upon to meet different qualification requirements of the various local governments.

I conclude, on the first question, that the work of the steam dredge is maritime and that the structure is a seagoing barge.

[2] As to the second contention: It may be admitted that reasonable police regulations may be imposed upon maritime craft, where considerations of safety are present in the locality under the jurisdiction of a municipality. Such regulations must be reasonable ones, and may be enforced, provided that the United States government has not already taken possession of the field in which it has primary jurisdiction. The law applicable was well stated by Judge Brown in The City of Norwalk (D. C.) 55 F. 98, where he said that the rule in favor of federal jurisdiction did not "exclude general legislation by the states, applicable alike on land and water, in their exercise of the police power for the preservation of life and health, though incidentally affecting maritime affairs: Provided that such legislation does not contravene any acts of Congress, nor work any prejudice to the characteristic features of the maritime law, nor interfere with its proper harmony and uniformity in its international and interstate relations."

[3] Shipping Act 1908, § 10 (35 Stat. vol. 1, p. 428 [Comp. St. § 8178]), provides for the inspection of the hull and equipment of seagoing barges. In my opinion, that law fully authorizes the inspection of dredger barges and their equipment, which latter consists largely of the boiler and engines. There was evidence offered to show that it is not the practice of the department, charged with the duty to make inspection of vessels, to inspect barges unless they are used directly in the work of transporting passengers or freight. But if the statute has, as I have concluded, brought dredges of the kind involved in this suit within the federal inspection field, then it matters not whether the officers charged with inspection duty in practice include or exclude such a barge from inspection.

It follows that decree should be in favor of the plaintiff. Due exception of defendants to the entry thereof will be allowed.