# THE ATTORNEY GENERAL
## OF TEXAS
GERALD C. MANN        AUSTIN 11, TEXAS
ATTORNEY GENERAL



Hon. Thomas L. Blanton, Jr.      Opinion No. O-2651
County Attorney                Re: Application of the
Shackelford County           chauffeur's license law in
Albany, Texas                 connection with Railroad
                                Commission driver's license.

Dear Sir:

       We are in receipt of your letters of recent date requesting our opinion whether the owner of a cattle truck, registered for loads of 7,000 pounds, who has had a Railroad Commission permit which has expired, should now be prosecuted for operating a motor vehicle without having obtained a chauffeur's license.

       Reference is herein made to several statutory enactments passed by the Legislature and effective since the last codification of our laws. Therefore, for the sake of brevity and clarity, the various statutes from which we quote are numbered as shown in Vernon's Annotated Texas Statutes.

       Article 6687a, Civil Statutes, in paragraph (g) defines a chauffeur:

       "(g) Chauffeur. Any person who operates a motor vehicle for any purpose, whole or part time, as an employee, servant, agent, or independent contractor, whether paid in salary or commission; and every person who operates a motor vehicle while such vehicle is in use for hire or lease."

       Section 2 of said Article 6687a provides that no person shall drive any motor vehicle upon a highway in this state unless such person has been licensed either as an operator or chauffeur, "except those expressly exempt under this act."

       Section 3 of the same article provides a number of exceptions, and paragraph (c) reads as follows:

       "(c) Drivers of commercial motor vehicles operating under the jurisdiction of the Railroad Commission of Texas who are required to have a driver's license issued by that department, shall

not be required to secure a chauffeur's or oper-
ator's license under the terms of this Act for
the operation of such vehicles, but such persons
shall be amenable to the other provisions of
this law incident to the cancellation of chauf-
feur's or operator's licenses."

The Texas Motor Carrier Act, Article 911b, requires
certain motor carriers operated for compensation or hire to
comply with its provisions, and the motor carrier must procure
either a certificate of convenience and necessity, if a common
carrier, or a permit, if a contract carrier, from the Railroad
Commission of Texas. The term "motor carrier" is defined in
paragraph (g) of Section 1 of Article 911b, as follows:

"(g) The term 'motor carrier means any person,
firm, corporation, company, co-partnership, associa-
tion or joint stock association, and their lessees,
receivers or trustees appointed by any court whatso-
ever, owning, controlling, managing, operating or
causing to be operated any motor propelled vehicle
used in transporting property for compensation or
hire over any public highway in this state, where in
the course of such transportation a highway between
two or more incorporated cities, towns or villages
is traversed; provided that the term 'motor carrier'
as used in this Act shall not include, and this act
shall not apply to motor vehicles operated exclusively
within the incorporated limits of cities or towns."

Paragraph (b), Section 4 of Article 911b, requires
the driver's license referred to in paragraph (c) of Section
3 of Article 6687a, supra. We quote:

"(b) The Commission is hereby vested with power
and authority and it is hereby made its duty to re-
quire that each driver of a motor propelled vehicle own-
ed or operated by a motor carrier under the provisions
of this Act shall have a driver's license, which li-
cense shall be issued by the Commission pursuant to an
examination testing the ability and fitness of the
applicant and under such rules and regulations as the
commission may prescribe; provided that every driver
aforesaid shall acquire a driver's license within
thirty (30) days after this Act takes effect and shall
annually thereafter on or before the anniversary of
the date of the original license acquire a renewal
thereof. Such license issued shall be for a term of
one year. The commission is empowered further to issue

temporary licenses, in case of emergency, for such term as the commission may deem expedient; provided such term shall not exceed ten (10) days and there shall be no right or privilege of renewal thereof. The Commission is hereby authorized to collect a fee of One Dollar ($1.00) for each annual license fee or renewal. The Commission may suspend or revoke any such license for cause after notice and public hearing. It shall be unlawful for any motor carrier to operate a motor propelled vehicle in this state unless such vehicle is operated by a driver holding an unrevoked and uncanceled license issued by the Commission."

In order to answer your question it is necessary that we construe the meaning of paragraph (c) of Section 3 of Article 6687a, supra, in the light of the other statutes involved and which we have set out herein. It will be noted the exemption applies to drivers of commercial motor vehicles operating "under the jurisdiction of the Railroad Commission" etc.

Obviously, the fact that a vehicle had been operated under a Railroad Commission permit would not justify, within itself, the conclusion that it should continue to be used as a motor carrier. Before the driver's license of the commission could be required, the vehicle must be owned or operated by a motor carrier. (Paragraph (b) of Section 4, Article 911b, supra.) If we assume, as intimated in your letters that the vehicle is being operated, in violation of the Motor Carrier Act, although it should, under the facts, be operated in compliance therewith, and the driver thereof fails and refuses to obtain a Railroad Commission driver's license should he be entitled to claim the exemption provided by paragraph (c) of Section 3, Article 6687a? Unless the driver is operating the vehicle as a motor carrier, clearly he would not be entitled to the exemption; and if on the contrary he is operating the motor vehicle as an employee, servant, agent or independent contractor, or if the vehicle is in use for hire or lease, a chauffeur's license is required.

We think the phrase "under the jurisdiction of the Railroad Commission" in the statute under consideration, admits of the construction that it includes only those persons operating commercial motor vehicles in conformity with the laws authorizing the commission to assume jurisdiction. The phrase "under and by virtue of" has been held to mean "by or through the authority of." The word "under" has the same signification. It is also defined "in subordination to," and "in accordance or conformity with." See Cent.Dict., Webster's New Int. Dict., Bassett v. Mills, 89 Tex. 162, 34 S.W. 93.

As to the meaning of "jurisdiction" we quote from Corpus Juris (35 C.J. 426):

> "Jurisdiction, derived from 'Jus dicere' or 'jus dico,' is a term in general use, of comprehensive and large import. The term has different meanings, dependent upon the connection in which it is found and the subject matter to which it is directed. But it is often used without any determinate signification. It is generally defined as the authority or power which a man has to do justice in causes of complaint brought before him; the power and authority to declare the law. As applied to a sovereign, either state or nation, jurisdiction signifies the authority to make, declare, and execute laws; the right to apply the law to acts of persons. Jurisdiction always emanates directly and immediately from the law; it is a power which nobody upon whom the law has not conferred it can exercise."

See also Withers v. Patterson, 27 Tex. 491, 86 Am. D. 643; Commonwealth v. Breakwater Co., 214 Mass. 10, 100 N.E. 1034.

Under the foregoing authorities, the operation in question is not "under the jurisdiction of the Railroad Commission" although same may be "subject to" its jurisdiction. It is, therefore, our opinion that the exemption set up in paragraph (c), Section 3 of Article 6687a is not applicable and prosecution will lie under the facts submitted by you, for failure to comply with the chauffeur's license law.

Your first letter gave us the impression that your question was whether a person should be required to obtain a chauffeur's license where he used his own truck to haul property owned by him. Such question was fully answered in the opinion heretofore sent to you.

APPROVED AUG 30, 1940
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY
GENERAL

Yours very truly
ATTORNEY GENERAL OF TEXAS
By /s/ Benjamin Woodall
Benjamin Woodall, Assistant

APPROVED: OPINION COMMITTEE
BY: BWB, CHAIRMAN

BW:ob:wb