UNITED STATES of America, Plaintiff-Appellee,

v.

GAHAGAN DREDGING CORPORATION, Defendant-Appellant.

No. 286, Docket 26096.

United States Court of Appeals Second Circuit.

Argued March 10, 1961.

Decided April 27, 1961.

Foley & Martin, New York City (Christopher E. Heckman, George A. Dean, New York City, of counsel), for defendant-appellant.

William H. Orrick, Jr., Asst. Atty. Gen., Morton S. Robson, U. S. Atty., New York City, Morton Hollander, Leavenworth Colby, Louis E. Greco, Walter L. Hopkins, Attys., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before LUMBARD, Chief Judge, and MAGRUDER and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Plaintiff, United States, sued to collect penalties of $1500 assessed pursuant to 46 U.S.C.A. § 398 against the defendant, Gahagan Dredging Corporation. The complaint as amended alleged that the defendant was the owner of three barges (the Barge Bernie Harris and the Barges 100 and 101) which the defendant permitted to be navigated on the high seas during the period "of about March 10–27, 1956," without first having obtained the certificate of inspection required for seagoing barges, provided for by ch. 212, § 10, 35 Stat. 428 (1908) as amended by 60 Stat. 1097 (1946) [1] (hereinafter referred to as § 10); and that the defendant thereupon became liable for a penalty of $500 under 46 U.S.C.A. § 398 as to each of the said barges. The defendant entered a general denial, and for a separate defense challenged the Government's complaint as failing to state facts upon which relief could be granted.

The district judge found that the three vessels were "seagoing barges" within the meaning of § 10, that they had traversed the high seas, and that the penalties were properly assessed. The Government was granted judgment. Defendant appeals. Its sole argument is that the judge below erred when he determined that the three vessels were "seagoing barges."

Section 10 (46 U.S.C.A. § 395, 1952 ed. U.S.Code) provides:

"Seagoing barges; certificates.

"The Coast Guard shall at least once in every year inspect the hull and equipment of every seagoing barge of one hundred gross tons or over, and shall satisfy itself that such barge is of a structure suitable for the service in which she is to be employed, has suitable accommodations for the crew, and is in a condition to warrant the belief that she may be used in navigation with safety to life. It shall then issue a certificate of inspection in the manner and for the purposes prescribed in sections 399 and 400 of this title."

It appears that the Barge Bernie Harris was actually a dredge, i. e., a barge containing equipment to be used in dredging operations. The parties stipulated the following as fact: That the Dredge Bernie Harris and the Barges 100 and 101 were not and never had been regularly employed as seagoing barges; that the three vessels were not regularly employed in navigation as seagoing barges; that any seagoing voyages made by any of the three were made only on rare occasions; that the design and construction of the three vessels was not such as to make them fitted for use on the sea or ocean; that the three were not heavily constructed to withstand weather and water in the heavy sea; and that at the time the alleged violations occurred no certificates of inspection required for seagoing barges had been obtained for any of the three vessels.

---

[1] 46 U.S.C.A. § 395, U.S.Code 1952 ed. The Section was Section 10 of the Seagoing Barge Act of May 28, 1908, but has been amended since the events in suit, and the present 46 U.S.C.A. § 395 contains the latest amendment, found in ch. 350, § 3, 70 Stat. 225 (1956). In view of this situation the Statute reference prior to codification is used throughout the opinion. Section 13 of the Seagoing Barge Act of 1908 was amended by Public Law 86–244, 73 Stat. 475 (1959), but as that amendment eliminates from the Section material not involved here and preserves the requirement for a certificate of inspection, the U.S.Code reference for that Section, 46 U.S.C.A. § 398, is used.

■ We are of the opinion that the court below properly determined that the term "seagoing barge" encompassed each of plaintiff's three vessels.

■ The position taken by the Coast Guard is that a "seagoing barge" is any barge that goes to sea. This position is exemplified by its Merchant Marine Safety Instruction No. 1–56 issued on January 5, 1956, some three months before the defendant's violations, which provided in pertinent part as follows:

"3. Action.

\* \* \* \* \* \*

"b. Domestic voyages:

"(1) Inspection and certification. When nonself-propelled inland dredges, barges, etc., of 100 gross tons or over are being moved by sea between two domestic ports, they shall be inspected and certified as seagoing barges. A drydock examination shall be required prior to the issuance of the certificate of inspection."

The instruction indicated the intention of the Coast Guard thenceforth consistently to inspect vessels like the three here under the authority of § 10 even if such inspections had not previously consistently been pursued.[2] This was a reasonable interpretation of the somewhat ambiguous language in a statute designed for the protection of life and property by the agency charged with the enforcement of the policy of that statute.[3] The agency interpretation should not be casually disregarded.[4]

■ Section 10 requires the Coast Guard to satisfy itself that a seagoing barge is in such condition "that she may be used in navigation with safety to life." We interpret the quoted language to mean that the Coast Guard's duty is to protect lives that might be endangered by the unseaworthiness of the vessels required to be inspected.[5] In the present case this duty is owed not only to persons aboard the towing vessel or on the barges, but also to persons on vessels that might collide with the uninspected vessels while afloat, or with their hulks should they sink.

Although not specifically mentioned in the section, it is reasonable to presume

2. If prior to the issuance of the January 5, 1956 Instruction the Coast Guard had only inconsistently insisted on the inspection of such vessels this fact would not prejudice the subsequent proper exercise of its jurisdiction. United Dredging Co. v. City of Los Angeles, D.C. S.D.Cal., 10 F.2d 239, at page 240, affirmed 9 Cir., 1926, 14 F.2d 364.

3. H.R.Rep. No. 2094, 84th Cong.2d Sess., 2 U.S.Code Congressional and Administrative News 1956, p. 2641, accompanying the Senate Bill that became ch. 350, § 3, 70 Stat. 225 (1956), that amended the Seagoing Barge Act of 1908, and which contained therein the latest amendment to § 10, declared that: "Since the Coast Guard has the sole responsibility for safety of ships and lives at sea, its opinion as to the desirability of the bill is entitled to considerable weight."

4. See United States v. Obermeier, 2 Cir., 1950, 186 F.2d 243, 247, certiorari denied 1951, 340 U.S. 951, 71 S.Ct. 569, 95 L. Ed. 685; Woods v. Petchell, 8 Cir., 1949, 175 F.2d 202, 208.

5. "Appellees invoke the familiar rule requiring a strict construction of statutes penal in their nature. Section 395, [§ 10 of the Seagoing Barge Act] providing for the certificate of the inspectors, states its purpose to make barges navigable with reference to 'safety to life.' This failure to secure such a certificate is the penalized thing for which § 398 was enacted. Strictness of construction should not defeat the real objective of the statute. We hold that Congress intended to require such barges as the Kohala to have the inspectors' certificate as to her safety while so being navigated in her occupation of carrying fishermen at sea." United States v. Monstad, 9 Cir., 1943, 134 F.2d 986, at page 988.

"The evident aim of the federal statute [§ 10 of the Seagoing Barge Act] is to promote the safety of those on shipboard, and it should be given a broad rather than a restricted scope in order to effectuate its purpose. The safety of those upon other vessels may be involved as well as those upon the one to be inspected." Commonwealth v. Breakwater Co., 1913, 214 Mass. 10, 15, 100 N.E. 1034, 1037.

# 642

that Congress intended that not only life but property, too, was to be preserved by the inspection requirement. The dangers which § 10 guards against exist on a barge's first voyage to sea and on all subsequent ones whether the voyages are rare or frequent. A requirement that every barge over 100 gross tons be inspected before being utilized in "seagoing" trips insures that the policy Congress enunciated will be thoroughly enforced.[6] See City of Los Angeles v. United Dredging Co., 9 Cir., 1926, 14 F.2d 364.

■ Appellant, relying on the fact that the Barge Bernie Harris, a dredge vessel, has always been unseaworthy, advances this fact as conclusive proof that it is not a "seagoing barge." Appellant then argues that even though it may cause the vessel to journey between domestic ports by traversing the open sea the vessel is not required to be inspected or certificated as a "seagoing barge." To adopt this argument would be to contradict completely the clear policy Congress enunciated in § 10. Appellant also relies on Commonwealth v. Breakwater Co., 1913, 214 Mass. 10, 100 N.E. 1034, where the Massachusetts court, after declaring that the original 1908 Act had been designed to protect those at sea, reversed a lower court determination that as a matter of law the statutory phrase "seagoing barge" meant any barge that went to sea, and remanded the case on the ground that whether the particular barge was a "seagoing barge" was a question of fact for the jury. Appellant's reliance is misplaced, for even if we were to agree that such questions are for the trier of fact, Judge Clancy found it to be a fact that the three barges were "seagoing barges," and this finding is not "clearly erroneous." Fed.R.Civ.P. 52(a), 28 U.S.C.A. However, we think it is clear that the issue before us is that of interpretation of ambiguous statutory language, and such an issue is determinable by the court. Achilli v. United States, 1957, 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918; Vermilya-Brown Co. v. Connell, 1949, 335 U.S. 377, 386–390, 69 S.Ct. 140, 93 L.Ed. 76; N. L. R. B. v. Hearst Publications, 1944, 322 U.S. 111, 131, 64 S.Ct. 851, 88 L.Ed. 1170; Norton v. Warner Co., 1944, 321 U.S. 565, 569, 64 S.Ct. 747, 88 L.Ed. 430; Corn Products Refining Co. v. Benson, 2 Cir., 1956, 232 F.2d 554. Insofar as Commonwealth v. Breakwater Co. is contrary to this holding we think it error.

The judgment below is affirmed.

---

6. 46 U.S.C.A. includes a comprehensive pattern of federal legislation designed to insure the safety of marine equipment, and several of its sections define the vessels covered by those sections by referring to the waters upon which the vessels are ordinarily operated. See 46 U.S. C.A. §§ 367, 390(b); cf. 46 U.S.C.A. § 672c(2). But we should not read the Congressional direction in 46 U.S.C.A. § 367, that vessels propelled by internal-combustion engines are to be considered "seagoing" and thereby subject to inspection only if they "in the usual course of their employment proceed outside the line dividing the inland waters from the high seas" so as to restrict the remedial provisions of another section in which no such Congressional definition has been incorporated. Under 46 U.S.C.A. § 375, the Commandant of the Coast Guard has the authority to promulgate "necessary regulations required to carry out in the most effective manner" the laws which prescribe inspections "and such regulations shall have the force of law." As the purpose of the inspection laws is to protect against the perils of maritime navigation, Huron Portland Cement Co. v. City of Detroit, 1960, 362 U.S. 440, 445, 80 S.Ct. 813, 4 L.Ed.2d 852, their effectiveness may well be advanced by a regulation such as the one involved in this case, Merchant Marine Safety Instruction No. 1–56.